IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON


CINDY DAVIS,

        Plaintiff,


v.                                            CIVIL ACTION NO. 3:02-1364[1]
                                            consolidated with 3:05-0523


MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.


**<u>MEMORANDUM ORDER</u>**

        In this action, filed under the provisions of 42 U.S.C. § 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her applications for supplemental security income based on disability.  The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

        Plaintiff filed an application on November 1, 1999, alleging disability as a consequence of a learning disability.  On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found her not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review.  Thereafter, plaintiff filed a

---

[1]By Order entered October 20, 2006, Civil Action No. 3:02-1364 was re-opened and consolidated with Civil Action No. 3:05-0523.

civil action seeking review of the Commissioner's decision.[2]  By order entered February 28, 2003, the court remanded the case to the Commissioner.

While the first application was pending, plaintiff filed a second application on August 1, 2001, alleging disability as a result of "back problems and nerves."  This application was again denied through the administrative law judge level, and the Appeals Council denied review.  Plaintiff then filed another civil action seeking review of the decision.[3]  Upon discovering that the hearing tape was blank, the case was remanded on motion of the Commissioner.  The Appeals Council then sent both cases to an administrative law judge for further proceedings.  The administrative law judge, after holding a supplemental hearing, again found plaintiff not disabled, and the Appeals Council denied her request for review.  Thereafter, she filed the complaint in Civil Action No. 3:05-0523 seeking review of the Commissioner's decision. The Commissioner subsequently moved to reopen 3:02-1364, reinstate it to the Court's docket and to consolidate that action with 3:05-0523.

At the time of the most recent administrative decision, plaintiff was 35 years of age and had obtained a GED through a vocational training program.  Her past relevant employment experience consisted of work at a fast food restaurant.  In his decision, the administrative law judge determined that plaintiff's borderline intellectual functioning and anxiety were "severe" impairments.  Concluding that she had the residual functional capacity for a limited range of work at all levels of exertion and that her past relevant work at McDonald's[4] was not precluded by these limitations, the administrative law judge found plaintiff not disabled.

---

[2]Civil Action No. 3:01-0938.

[3]Civil Action No. 3:02-1364.

[4]Plaintiff was performing this work full-time from September 2003 on.

2

From a review of the record, it is apparent that the evidence, though conflicting, provides substantial support for the Commissioner's decision.  The administrative law judge found, consistent with prior decisions, that the evidence did not establish any physical impairment which was "severe," i.e., would "significantly" impair plaintiff's ability to engage in work activities.[5] Plaintiff does not disagree with the administrative law judges' findings in this regard.  Even though she testified to problems with back pain, she admitted it was relieved with over-the-counter pain medication, and the reports do not indicate that back pain interferes with her ability to perform any daily activities or is more than a minor problem in her job where she is on her feet all or most of the time.

In terms of mental impairments, plaintiff has a history of being convicted of sexual assault of a minor and participated in counseling for one and one-half years, ending in the latter part of 2001. Plaintiff indicated that this therapy helped her.  There is no evidence of any further treatment until April 29, 2004, when her family physician prescribed Zoloft which resulted in immediate and lasting improvement in her anxiety symptoms.

The Commissioner sent plaintiff to William Steinhoff, MA for evaluation on January 7, 2000.  She had mildly pressured speech, restlessness, mild tangentiality in her thoughts, poor insight, moderately deficient judgment, markedly deficient recent memory and concentration, and her affect was inappropriate during testing.  WAIS-R scores were all in the sixties; however, Mr. Steinhoff opined that they were not valid because plaintiff did not appear to put forth her best effort.  He also felt she may have been deliberately providing incorrect responses. His diagnosis was attention

---

[5]20 C.F.R. §416.920(c).

3

deficit disorder; adjustment disorder, mixed, with anxious and depressed mood; rule out bipolar II disorder; and borderline intellectual functioning.

On November 15, 2000, the Department of Health and Human Resources, in furtherance of her application for a medical card, sent plaintiff to the Prestera Center for assessment of her mental functioning. Plaintiff reported at that time that she attended church twice a week and spent much of the rest of her time doing community service work required as part of the sentence in her criminal case.

The examiners observed plaintiff to be cooperative with normal speech, motor behavior, mood and affect. I.Q. test scores were generally higher, except the verbal score which was 66. Like Mr. Steinhoff, the examiners found her scores consistent with borderline intellectual functioning rather than a lower level of functioning. They also noted that plaintiff did not complain of any mood or affective disorders. Her Global Assessment of Functioning was 65, which is consistent with "mild" symptoms or "some" impairment of social or occupational functioning, "but generally functioning pretty well ... ."[6]

Finally, Penny Perdue, M.A. and Susan Johnson, M.Ed., conducted a consultative psychological exam on November 6, 2001, approximately one year after the Prestera exam. Plaintiff reported having anxiety in the form of constant worrying which she stated she could control, but it interfered with concentration. She also related being depressed a couple days per week for about one hour. Ms. Perdue noted plaintiff was cooperative and interacted appropriately as well as displaying an appropriate mood, normal affect, limited insight and mildly deficient judgment. Recent

---

[6]See Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., American Psychiatric Association, 1994 at 32.

4

memory was characterized as markedly deficient whereas concentration was moderately deficient. On I.Q. testing, plaintiff obtained a verbal score of 67, performance score of 74 and full scale score of 67. Due to inconsistent effort, limited persistence at times and inconsistencies with plaintiff's reported level of adaptive functioning, these scores were considered invalid. The diagnosis was anxiety disorder, NOS.

In assessing plaintiff's borderline intellectual functioning and anxiety at the third step of the "sequential evaluation,"[7] the administrative law judge, relying on Mr. Steinhoff's and Ms. Johnson's opinions, concluded plaintiff would not meet §12.05C of the listing relating to mental retardation since the scores she obtained which would qualify under this listing were invalid and felt to under represent her intellectual abilities. The administrative law judge noted that this conclusion was consistent with the diagnosis made by the evaluators at Prestera who did not specifically indicate that plaintiff's scores were not valid but nonetheless diagnosed borderline intellectual functioning instead of mild mental retardation. While plaintiff argues that the administrative law judge did not properly consider all the I.Q. test scores, particularly those from Prestera, the court concludes the evaluators' observations and diagnoses provide substantial support for the finding that this listing is not met.

A state agency psychologist reviewed the evidence and concluded, in a December 10, 2001 assessment,[8] that plaintiff would be moderately limited in her abilities to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods and sustain

---

[7]See 20 C.F.R. §416.920.

[8]A second state agency psychologist indicated his concurrence with this assessment on January 18, 2002.

an ordinary routine without special supervision.  He also concluded that, even though plaintiff had some difficulty with social functioning and concentration, she could understand and follow routine two and three step instructions with ordinary supervision.

An April 15, 2004 treatment note from Dr. Revell, plaintiff's treating physician, reflects her complaints of being stressed for about three months.  It was noted she had no previous treatment for her nervous problems. Plaintiff related appropriately and displayed a euthymic affect along with some fidgeting.  When she returned two weeks later still having trouble handling stress, Dr. Revell, as noted, prescribed Zoloft which subsequent reports reflect significantly improved her symptoms.

The administrative law judge adopted the state agency medical advisors' assessment as to residual functional capacity and explained his reasoning for the degree of limitation found.  The court finds his reasoning persuasive and his findings supported by substantial evidence. While plaintiff expressed concern that the assessment relied upon is dated December 10, 2001, and that the psychologist indicated the assessment covered the period from "8/1/01 to present," his notes indicate he considered all the evidence up to that point, which included all of the psychological evaluations in the record. As noted, plaintiff began part-time work at McDonald's in March of 2003 and went to full time in September of that year. She related how much she enjoyed her job and getting to interact with customers. Plaintiff's concerns, are, therefore, not well founded.  After assessing residual functional capacity, the administrative law judge determined that plaintiff would still be able to perform her past and current work at McDonald's.

Plaintiff alleged significant limitation on her activities as a result of mental impairments, and the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded that her testimony was "fairly credible." He noted her candid discussion

about her current work and having no mental or physical problems in performing it.  He also noted her statements that medication helped her memory.  In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," his findings are entitled to "great weight." <u>Shively</u> v. <u>Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984) and in this case the credibility findings, while favorable, support the decision denying benefits.  While he found plaintiff able to perform her past work, the administrative law judge also took testimony from a vocational expert.  He gave this witness a hypothetical question which included plaintiff's age, education, work experience and a reasonably accurate profile of her functional capacity and overall medical condition, and the expert testified that there were significant numbers of jobs in the national economy at all exertional levels which plaintiff was capable of performing.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, <u>Thomas</u> v. <u>Celebreeze</u>, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this court is bound to uphold the decision.  <u>Blalock</u> v. <u>Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).  In the present case, the evidence, though conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity.  Under such circumstances, the decision of the Commissioner should be affirmed.

On the basis of the foregoing, it is ORDERED that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

The Clerk is directed to file this Memorandum Order and to mail a copy of the same to all counsel of record.

ENTER:        March 22, 2007

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE